IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:20cv58 |
| Plaintiffs, | : | Judge Matthew W. McFarland |
| v. | : | |
| VARINDER SINGH a/k/a SATPAL SINGH, | : | |
| Defendant. | : | |

**ORDER DENYING MOTION TO DISMISS (Doc. 5)**

The Government filed this action seeking revocation of Defendant Varinder Singh's naturalization under 8 U.S.C. § 1451(a). Singh moved to dismiss the complaint, under Fed. R. Civ. P. 12(b)(6), as time-barred and for failure to state a claim upon which the Court may grant relief. That motion is the matter presently before the Court. (Doc. 5.) The Court denies Singh's motion for the reasons below.

**FACTS**

In reviewing a motion to dismiss, the Court takes the allegations in the complaint as true. *City of Columbus, Ohio v. Hotels.com, L.P.*, 693 F.3d 642, 648 (6th Cir. 2012).

Singh was born in India and is a naturalized United States citizen. The complaint lays out Singh's various attempts to immigrate to the U.S. Specifically, it states that Singh attempted to obtain his naturalization using two separate identities: Varinder Singh and Satpal Singh.

1

In September 1993, Singh filed a Form I-765, Application for Employment Authorization. He stated his name was Varinder Singh, that he had never used any other names, and that he last entered the country on July 8, 1991, without inspection, near Tijuana, Mexico. The next year, the former Immigration and Naturalization Service ("INS")[1] issued an Order to Show Cause ("OSC"), charging Singh with deportability for entering the country without inspection. The United States Postal Services returned the OSC to the INS as "Attempted-Not Known." (Compl. at ¶ 24-31.)

In 1995, Singh submitted a Form I-589, Application for Asylum and Withholding of Deportation. This time, he used the name Satpal Singh. He wrote that his date of last entry to the country was on or around May 6, 1995, near Tijuana. He stated that he had not used any other names. (*Id.* at ¶¶ 8-9.) He appeared for an interview, where he confirmed his written responses. He did not testify credibly. (*Id.* at ¶ 17.) He was served with another OSC and Notice of Hearing in February 1996, charging him with deportability. He did not appear. The Immigration Judge ordered him deported *in absentia*. The INS issued a Form I-166, Notice to Report for Departure. That form, too, was returned as "Attempted-Not-Known." He did not appear for his scheduled deportation. (*Id.* at ¶¶ 18-23.)

Years later, in 2004, Singh submitted a Form I-485, Application to Register Permanent Residence or Adjust Status. He went back to using the name Varinder Singh.

---

[1] The Homeland Security Act of 2002 abolished the INS. *See* §§ 441 and 471 of, Pub. L. No. 107-296, 116 Stat. 2136 (Nov. 25, 2002). United States Citizenship and Immigration Services ("USCIS") is now the immigration agency within the Department of Homeland Security ("DHS") responsible for adjudicating immigration benefits. *See id.* at § 451.

2

He stated that his last place of entry was July 8, 1991, near Tijuana, without inspection. That form asks the question, "Are you under a final order of civil penalty for violating section 274C of the Immigration Act for use of fraudulent documents, or have you, by fraud or willful misrepresentation of a material fact, ever sought to procure, or procured, a visa, other documentation, entry into the U.S., or any other immigration benefit?" He answered "no." (*Id.* at ¶¶ 39-44.) He attached to that form a Form G-325A, Biographic Information, which stated that he had not used any other names. In June 2008, based on the Form I-485 and a subsequent interview, United States Citizenship and Immigration Services (USCIS) approved Singh's application and granted him the status of a permanent resident. (*Id.* at ¶ 53.)

About five years later, in May 2013, Singh submitted a Form N-400, Application for Naturalization to the USCIS. He left blank the question that asked whether he had used any other names. He did not disclose that he had previously used the name Satpal Singh. That form contains the question, "Have you **ever** given false or misleading information to any U.S. government official while applying for any immigration benefit or to prevent deportation, exclusion, or removal?" (emphasis original). He answered no. Another question the form asks is, "Have you **ever** lied to any U.S. government official to gain entry or admission into the United States?" (emphasis original). He answered "no" to that too. He did not disclose that he had previously been placed in removal proceedings under another identity and had been ordered deported. (*Id.* at ¶¶ 55-63.)

A few months later, a USCIS Immigration Services Officer interviewed Singh, under oath, regarding his naturalization application. He testified consistently with his

3

answers on the form, including that the only name he had ever used was Varinder Singh. He signed his form at the end of the interview, swearing to its contents. The USCIS approved his application. The next week Singh took the Oath of Allegiance and became a naturalized U.S. citizen. (*Id.* at ¶¶ 65-75.)

In January 2020, the Government filed a complaint to revoke Singh's naturalization. It alleges five independent grounds to support denaturalization: First, he procured his permanent resident status by fraud or willful misrepresentation, making him ineligible to naturalize. Second, he had a final order of deportation outstanding at his adjustment, meaning the USCIS lacked jurisdiction to approve his adjustment to permanent resident status. Third and fourth, he testified falsely at his naturalization interview and committed unlawful acts—both sets of actions deprived him of the good moral character necessary to naturalize. Fifth, he procured his citizenship by willfully misrepresenting material facts in his naturalization application and interview.

Singh moved to dismiss the complaint.

## LAW AND ANALYSIS

"A motion to dismiss for failure to state a claim is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005). The Court accepts the complaint's factual allegations as true but is not bound to do the same for a complaint's legal conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, the claim for relief must be "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is, the complaint's factual content should allow the court to

4

reasonably infer that the defendant is liable for the alleged misconduct. *Id.* A complaint that lacks such plausibility warrants dismissal. *Id.*

Singh advances two arguments in support of his motion to dismiss. First, he argues that a statute of limitations bars the Government's action. Second, he claims that the Government fails to allege facts sufficient to state a legal basis for his denaturalization. Neither position succeeds, for the reasons below.

### A. This action is not time-barred.

A federal statute provides that "an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued." 28 U.S.C. § 2462. Singh claims that denaturalization actions are penalties, making them subject to that statute of limitations. For support, he turns to *Kokesh v. SEC*, 137 S. Ct. 1635, 1639 (2017).

In *Kokesh*, the Supreme Court considered whether § 2462 applied to the Security Exchange Commission's disgorgement actions to enforce violations of federal securities laws. The limitations period would only apply if the actions qualified as a fine, penalty, or forfeiture. *Id.* at 1642. The Court defined "penalty" as a "punishment, whether corporal or pecuniary, imposed and enforced by the State, for a crime or offen[s]e against its laws." *Id.* (quoting *Huntington v. Attril*, 146 U.S. 657, 667 (1892)). Two principles undergird that definition. First, the question of whether a sanction is a penalty depends partially on "whether the wrong sought to be redressed is a wrong to the public, or a wrong to the individual." *Id.* (quoting *Huntington*, 146 U.S. at 668). Private causes of

5

actions are generally not penalties, even if they appear to be, because "[p]enal laws, strictly and properly, are those imposing punishment for an offense committed against the State." *Id.* (quoting *Huntington*, 146 U.S. at 667). Second, a pecuniary sanction is only a penalty if its purpose is to punish the offender and deter others from committing the same offense. *Id.*

Singh argues that denaturalization proceedings fit the definition of a "penalty" under *Kokesh*. He cites government bulletins stating that denaturalization proceedings "send[] a clear message to immigration fraudsters — if you break our immigration laws, we will prosecute you and denaturalize you." *United States Files Denaturalization Complaints in Florida, Connecticut and New Jersey Against Three Individuals Who Fraudulently Naturalized After Having Been Ordered Deported Under Different Identities*, Office of Public Affairs, United States Department of Justice, September 19, 2017. In Singh's view, statements like this prove that denaturalization proceedings are penalties.

But history compels the conclusion, and *Kokesh* supports it, that revocation of citizenship is not a "penalty." Denaturalization proceedings are not imposed to penalize people for falsifying their citizenship applications — they are imposed "in the exercise of the power to make rules for the naturalization of aliens." *Trop v. Dulles*, 356 U.S. 86, 98–99 (1958). For over a century, the Supreme Court has held that statutes providing for the cancellation of citizenship impose "no punishment upon an alien who has previously procured a certificate of citizenship by fraud or other illegal conduct. It simply deprives him of his ill-gotten privileges." *Johannessen v. United States*, 225 U.S. 227, 242 (1912). In this light, courts recognize that denaturalization does not impose a penalty — rather, "it

6

deprives a privilege to one who was never rightfully entitled to it." *United States v. Dhanoa*, 402 F. Supp. 3d 296, 300 (D.S.C. 2019).

Nothing in *Kokesh* alters the course the Supreme Court has set. Here, even if denaturalization under § 1451(a) seeks to redress a wrong to the public, as Singh seems to argue, the purpose of that statute is not to punish or deter. *Trop*, 356 U.S. at 96; *United States v. Phattey*, 943 F.3d 1277, 1282 (2019); *United States v. Kairys*, 782 F.2d 1374, 1382 (7th Cir. 1986). Section 1451(a) simply "works to effectuate the intentions of Congress that only those qualified may become and remain citizens." *Kairys*, 782 F.2d 1374 at 1382. Singh identifies no court that has found that denaturalization constitutes a penalty for purposes of § 2462, before or after *Kokesh*. *See United States v. Multani*, No. 2:19-CV-01789-BJR, 2021 WL 633638, at *3 (W.D. Wash. Feb. 18, 2021). Although the Sixth Circuit has not resolved this question yet, the weight of the authority is against Singh: Courts that have considered whether § 2462 applies a statute of limitations to denaturalization proceedings, particularly post-*Kokesh*, have held that it does not. *E.g., Phattey*, 943 F.3d at 1283; *Dhanoa*, 402 F. Supp. 3d at 301; *United States v. Wasel*, No. 2:17-CV-12296, 2020 WL 4584168, at *2 (E.D. Mich. Aug. 10, 2020).

For these reasons, § 2462 does not bar the Government's action.

**B. The Government survives Rule 12(b)(6).**

The U.S. Constitution authorizes Congress to "establish an uniform Rule of Naturalization." U.S. Const. art. I, § 8, cl. 4. The Supreme Court requires "strict compliance with all the congressionally imposed prerequisites to the acquisition of citizenship." *Fedorenko v. United States*, 449 U.S. 490, 506 (1981). "Failure to comply with

7

any of these conditions renders the certificate of citizenship 'illegally procured,' and naturalization that is unlawfully procured can be set aside." *Id.* (quoting 8 U.S.C. § 1451(a)).

To be eligible for naturalization, an applicant must first be lawfully admitted for permanent residence. 8 U.S.C. § 1427(a); 8 U.S.C. § 1429. To be "lawfully admitted," an application for naturalization needs to be in "compliance with substantive legal requirements." *Turfah v. United States Citizenship & Immigration Servs.*, 845 F.3d 668, 672 (6th Cir. 2017) (quoting *In re Koloamatangi*, 23 I. & N. Dec. 548, 550 (BIA 2003)). Applicants who, by fraud or willful misrepresentation of a material fact, seek to procure, or have procured a visa, other documentation, or admission, or another immigration benefit, are inadmissible. 8 U.S.C. § 1182(a)(6)(C)(i).

Section 1451(a) provides for the denaturalization of citizens whose orders and certificates of naturalization were "illegally procured" or "procured by concealment of a material fact or by willful misrepresentation." 8 U.S.C. § 1451(a). The provision contains four independent requirements: (1) the naturalized citizen must have misrepresented or concealed some fact; (2) the misrepresentation or concealment must have been willful; (3) the fact must have been material; and (4) the naturalized citizen must have procured citizenship as a result of the misrepresentation or concealment. *Kungys v. United States*, 485 U.S. 759, 767 (1988).

The Government alleges facts that state a claim under the denaturalization statute. First, the complaint states that Singh used the first names Varinder and Satpal, yet, on the 2004 Form G-325A, he denied ever having used other names. Thus, he allegedly

8

misrepresented or concealed some fact. Second, the Government plausibly alleges that Singh did this willfully. "Willful misrepresentation itself requires no more than 'knowledge of the falsity' of facts presented to an immigration officer; unlike fraud, misrepresentation requires no intent to deceive." *Bazzi v. Holder*, 746 F.3d 640, 645 (6th Cir. 2013). Singh obviously knows whether his name is Varinder or Satpal. So there is a plausible allegation of willfulness here. Third, his identity, and his honesty in filling out the forms, is material. *See Fedorenko*, 449 U.S. at 509; *United States v. Hirani*, 824 F.3d 741, 748 (8th Cir. 2016); *United States v. Alrasheedi*, 953 F. Supp. 3d 112, 114 (D.D.C. 2013). And, fourth, the Government plausibly claims that Singh procured his citizenship due to his misrepresentation or concealment. An applicant "who obtained his citizenship in a proceeding where he made material misrepresentations [is] presumably unqualified." *Kungys*, 485 U.S. at 761. The preceding discussion shows that the Government has laid out factual allegations that Singh concealed his attempts to obtain immigration benefits under the name Satpal Singh. USCIS granted Singh the status of a permanent resident on the basis of his application and interview, which both failed to disclose those prior efforts. (*Id.* at ¶ 53.) So the presumption arises that Defendant was disqualified from citizenship. *United States v. Ahmed*, No. 2:12-CV-951, 2017 WL 6508570, at *10 (S.D. Ohio Sept. 20, 2017), *aff'd*, 735 F. App'x 863 (6th Cir. 2018).

At the Rule 12(b)(6) stage, Singh fails to rebut the presumption of disqualification from citizenship. He takes the position that the complaint defeats itself because it concedes that he disclosed his "prior involvement with immigration proceedings." (Doc. 10 at 10.) What Singh appears to ignore entirely is the Government's series of allegations

9

about his attempt to obtain immigration benefits under the identity Satpal Singh. At best, Singh treats the Government's recognition that he disclosed some details of his immigration history (*see* Compl. ¶¶ 43, 52) as a concession that he revealed *all* the details about his immigration history. To the extent Singh attempts to make that point, the complaint contradicts him. The Government alleges that Singh attempted to obtain immigration benefits under two identities, through two separate proceedings, and that he concealed his use of other names in his various applications. Since Singh fails to show that these allegations fail to state claims, the complaint survives Rule 12(b)(6).

## CONCLUSION

For the reasons above, the Court **DENIES** Singh's motion.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____
JUDGE MATTHEW W. McFARLAND